596 So.2d 399 (1992)
STATE of Louisiana
v.
Willie WILLIAMS, III.
Nos. 91-KA-0896, 91-KA-2327.
Court of Appeal of Louisiana, Fourth Circuit.
March 17, 1992.
*400 M. Craig Colwart, Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., Valerie Welz, Pam Moran, Asst. Dist. Attys., New Orleans, for appellee.
Before BARRY, BYRNES and JONES, JJ.
JONES, Judge.
Defendant, Willie Williams, appeals the trial court's judgment convicting him of a violation of La.R.S. 40:967, relative to the possession of cocaine, and sentencing him to two and a half years at hard labor. We affirm the trial court's judgment.
On January 4, 1991, at approximately 5:20 p.m., Officer Claudia Neal and her partner Officer Irving, were patrolling near the intersection of Choctaw and North Galvez Streets in New Orleans in an unmarked police car when she spotted four black males standing on the corner. She observed the defendant extend an unknown object in his hand to another individual, who, in turn, handed the defendant an undetermined amount of money.
Following close behind in an unmarked vehicle, New Orleans Police Officers Walsh and Thomas were contacted by Officer Neal via radio transmission for assistance. Thereafter, Officers Walsh and Thomas exited their vehicle and chased the fleeing suspect. During the foot chase, Officer Walsh observed the suspect discard two rock-like substances to the ground, which later proved to be crack cocaine. After apprehending the suspect, the officers arrested the suspect, and the police seized the discarded cocaine.
On February 14, 1991, defendant was charged by a bill of information with violating La.R.S. 40:967, relative to the possession of cocaine. On March 15, 1991, defendant entered a guilty plea under State v. Crosby, 338 So.2d 584 (La.1976) after his Motion to Suppress Evidence was denied. Defendant was sentenced the same day to serve two and a half years at hard labor. Two months later, the state filed a bill of information charging that defendant was a second felony offender, based upon a prior plea to possession of stolen property.
On August 30, 1991, the trial court conducted a hearing on the multiple bill. The defense argued that the bill was both untimely and insufficient. The court overruled defendant's objections and adjudicated him a second offender. Consequently, defendant was sentenced to a two and a half year sentence at hard labor, to be served concurrently with all other sentences.
A review of the record for errors patent reveals none.
*401 By his first assignment of error, defendant argues that the trial court erred in denying the motion to suppress the evidence seized.
Although not cited by the defendant or the state, the recent U.S. Supreme Court case of California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) controls this issue. In Hodari D., officers patrolling in a high crime neighborhood spotted a group of youths who fled on foot upon seeing the officers. One officer chased the accused and saw him toss down a small rock that the officer believed might be crack cocaine. Only then did the officer tackle Hodari D. and restrain him. The court held that a "seizure" within the meaning of the Fourth Amendment did not occur until the officer tackled the suspect. The court held that the pursuit of the suspect amounted to a "show of authority" by the police, but concluded that a show of authority is not the equivalent of a "seizure". The court stated:
... the word `seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful... It does not remotely apply, however, to the prospect of the policeman yelling `Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure.
Id. 111 S.Ct. at 1550.
In State v. Sidney Ganier, 591 So.2d 1328 (La.App. 4th Cir.1991), this court applied the reasoning and holding of Hodari D. to a case very similar to the present case. In Ganier, police officers chased a suspect and saw him throw down a white rock. The defendant was not physically restrained before he discarded the object. This court stated:
Housing projects within the City of New Orleans are known to be high crime areas and centers for drug activity. Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense ... We recognize that the Louisiana Constitution establishes a specific right to privacy and protects against unreasonable searches and seizures. But the arguably higher standard of liberty embodied in our State constitution does not affect the outcome of this case.

Ganier, at 1330.
Likewise, in State v. Gary Riley, 591 So.2d 1348 (La.App. 4th Cir.1991), this court applied Hodari D. and found that evidence discarded by a suspect being chased by police was abandoned before a "seizure" of the person occurred. In Riley, police officers saw the defendant huddled with two other men. The three subjects fled after seeing the police officers. One officer called to the defendant "Gary, stop!" and then saw the defendant throw down three plastic objects. This court concluded that the defendant was not "seized" when the objects were discarded and therefore the three plastic objects were lawfully seized by the officer.
In the present case, police officers observed what they believed was a drug transaction. The defendant fled and during the ensuing chase, Officer Walsh saw the defendant throw to the ground two rock-like substances. Under Hodari D., these items were discarded before the defendant was "seized" within the meaning of the Fourth Amendment. Police officers were justified in retrieving the abandoned items.
This assignment is without merit.
By his second assignment of error, defendant argues that the trial judge erred in imposing a constitutionally excessive sentence.[1] The defendant was sentenced as a second offender to serve two and one-half years at hard labor. The maximum *402 sentence the defendant could have received was ten years at hard labor and not more than a $10,000.00 fine.
La.R.S. 15:529.1, as amended in 1989, provides that the sentence imposed on a second offender "shall be for a determinate term of not less than one-half the longest term" for a first conviction of the substantive statute. Here, the defendant was convicted of violating La.R.S. 40:967(C) which provides a maximum sentence of five years. Thus, the defendant received the minimum sentence as a second offender: one-half the maximum five year sentence, or two and one-half years. Accordingly, because the defendant received the minimum sentence, his argument that this sentence is excessive is without merit.
By his final assignment of error, the defendant argues that the trial court erred in refusing to quash the multiple offender bill on the grounds that its filing was unreasonably delayed. The record reveals that following defendant's plea, the state filed a multiple bill of information two months after the date of the original sentencing. According to the defendant, this bill of information was untimely because the state had knowledge of the defendant's prior conviction at the time of the original sentencing.
La.R.S. 15:529.1, the multiple offender statute, does not provide a time period in which such bill should be filed and the matter adjudicated except to note that a defendant may be charged as a multiple offender if "at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted" of another felony. La.R.S. 15:529.1(D). In State v. Broussard, 416 So.2d 109 (La.1982), the Court noted that although R.S. 15:529.1 does not provide a time limitation by which a defendant must be charged as a multiple offender, such bill must be filed within a reasonable time after the State learns that a defendant has a prior felony conviction. The Court further stated:
The same considerations which underlie the constitutional right to a speedy trial compel a conclusion that upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time. Since the enhancement of penalty provision is incidental to the latest conviction, that proceeding to sentence under that provision should not be unduly delayed. Id. at 110-111.
Likewise, in State v. Thompson, 539 So.2d 1008 (La.App. 4th Cir.1989), writ den. 544 So.2d 399 (1989), this court noted:
A habitual offender proceeding under LSA R.S. 15:529.1 is an enhancement of penalty proceeding, not a prosecution for a crime. State v. Scott, 395 So.2d 714 (La.1981); State v. Alexander, 503 So.2d 782 (La.App. 3rd Cir.1987). As such, it is not governed by defendant's right to have an expeditious determination of guilt. State v. Johnson, 363 So.2d 458 (La.1978); State v. Alexander, supra. Rather, principles of fundamental fairness dictated by the due process clause of the Fourteenth Amendment prohibit inordinate delays in post-conviction proceedings such as imposition of sentence. State v. Duncan, 396 So.2d 297 (La. 1981); State v. Alexander, supra. Id. at 1010.
In State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974), the Court held that a multiple offender hearing must be completed before the defendant serves the sentence to be enhanced. The court stated: "A case must end at some point. Even persons who have been convicted of two or more felonies must be assured, after some passage of time, that the consequences of past criminal acts have been abated." Id. at 77. The Court further noted:
A defendant has a right to a speedy trial. La. Const. Art. 1, § 9 (1921); Sixth Amendment, U.S. Const. The same considerations which underly [sic] this constitutional mandate compel a conclusion that upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time. Since the enhancement-of-penalty provision is incidental to the latest conviction, the proceeding to sentence under that provision should not be unduly delayed. Cr. C.Cr.P. 874; Hernandez v. Wainwright, *403 296 F.Supp. 591 (M.D.Fla.1969). Although the best procedure may be to have a single sentencing after conviction, our statute does not require this. See A.B.A. Standards, Sentencing Alternatives and Procedures, § 5.-5(b) (approved draft 1968). But it does require at least that the proceeding to enhance sentence be held before an accused has served his sentence. Id. at 77.
In State v. Roberts, 588 So.2d 759 (La. App. 4th Cir.1991), this court held that even where the State could not set forth reasons for a seven-month delay between the original sentencing and the filing of the multiple bill, such delay was not unreasonable, especially given the fact that the defendant was sentenced to fifteen years imprisonment.
In State v. Spellman, 547 So.2d 1361 (La.App. 4th Cir.1989), the court held that a habitual offender bill filed three months following defendant's conviction was timely and therefore reasonable. Moreover, in State v. Abraham, 521 So.2d 511 (La.App. 4th Cir.1988), the court found that the multiple bill of information, filed almost one year after the date of original sentencing, was reasonable.[2]
Here, the State filed the multiple bill two months after the defendant was originally sentenced. The defendant argues that there was no reason why the State took so long to file the bill because it already knew at the time of trial about the predicate offense used to multiple bill him. However, based upon Louisiana jurisprudence, the multiple offender proceedings were not unreasonably delayed.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] It should be noted that this argument was apparently advanced by appeal counsel without knowing that the defendant was found to be a second offender. The defendant received the minimum sentence pursuant to the multiple bill.
[2] The State delayed filing the bill of information until the Louisiana Supreme Court ruled in State v. Abbott, 508 So.2d 80 (La.1987), relative to a jurisdictional issue.